IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-00220-FL

| | | |
|---|---|---|
| OCWEN LOAN SERVICING, LLC as authorized servicer and on behalf of HSBC Bank USA, N.A., as Trustee for the registered holders of ACE Securities Corp. Home Equity Loan Trust Series 2005-HE3, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| ROSA BURWELL, CLINT F. BURWELL, SHAWN VALENTINE, ANITA O. KING, and AMERICA'S WHOLESALE LENDER d/b/a Countrywide Home Loans, Inc. | ) ) ) ) ) | |
| Defendants. | ) ) | |
| AMERICA'S WHOLESALE LENDER d/b/a Countrywide Home Loans, Inc. | ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| MICHELLE HESS and BRANDIE VALENTINE, | ) ) ) ) | |
| Third-Party Defendants. | ) | |

This action comes now before the court on motion of defendant America's Wholesale Lender d/b/a Countrywide Home Loans, Inc. ("Countrywide") for summary judgment on its cross-claim for unjust enrichment against defendants Rosa Burwell and Clint F. Burwell (collectively sometimes "Burwell") (DE

#91, 113). The discrete issues in dispute have benefitted from prior review by the magistrate judge, hearing before him, and issuance of a well-considered Memorandum and Recommendation ("M&R"), to which no objections have been filed, which also is before the court (DE #119). The issues raised of or relating to defendant Countrywide's claims against defendant Burwell for unjust enrichment now are ripe for ruling. For the reasons that follow, the court grants in part and denies in part defendant's motion for summary judgment.

## STATEMENT OF THE CASE

Prior orders recently entered address other case issues of or relating to party alignment and/or disposition of certain claims, to which reference is made for additional explanations concerning the status of plaintiff, its claims against defendant Burwell, and the status of defendants Shawn Valentine and Anita O. King ("King"), and third-party defendants Michelle Hess ("Hess") and Brandie Valentine. The instant statement is more narrowly tailored to the summary judgment motion now before the court, which necessarily involves a complicated recitation because of the unique procedural posture of this case, as it relates to movant and defendants Burwell.

On August 6, 2009, defendant Countrywide moved for summary judgment on its cross-claim for unjust enrichment against defendant Burwell and its breach of contract claim against third-party defendant Hess (DE # 91). Since making that filing and upon subsequent negotiations among parties, on October 28, 2009, defendant Countrywide filed a successive motion for summary judgment against defendant Burwell, essentially amending the amount of relief sought from defendant Burwell and noticing the court that it had resolved claims against third-party defendant Hess (DE # 113). Primary impetus to the second filing appears grounded in the settlement of plaintiff's claims against defendant Countrywide and resolution of

2

defendant Countrywide's claims against defendant Hess, including determination that money paid by defendant Rosa Burwell in the amount of $45,000.00 received by the law firm of Boxley, Bolton, Garber & Hawyood, L.L.P., pursuant to an escrow agreement dated August 3, 2009, should belong to defendant Countrywide, as discussed more particularly below.

The court considers Countrywide's second filing as a supplement or amendment to that motion originally filed and addresses here defendant Countrywide's contentions on its unjust enrichment claim against defendant Burwell as presented originally August 6, 2009, and as supplemented October 28, 2009.[1]

In support of its motion, to the extent it proceeds against defendant Burwell, Countrywide relies on an assortment of materials variously introduced into the record. It relies on depositions taken of Rosa Burwell and Clint F. Burwell December 18, 2008, introduced into the record by plaintiff (DE ## 83, 84). The court takes up and decides the instant motion also with reference to items made a part of the foreclosure proceeding initiated by plaintiff against defendant Burwell in Wake Country Superior Court bearing court file number 06-SP-5121, tendered by defendant Countrywide with the original motion (DE # 91). Also made a part of the record, to which reference is made, are matters testified to by Gina Johnson, plaintiff's senior loan analyst, providing detail concerning certain transactions, including documentary evidence of or relating to the note entered into by Rosa Burwell and attendant deed of trust,

---

[1] The magistrate judge recommends that the court deny Countrywide's initial motion for summary judgment against defendant Burwell as moot in light of Countrywide's second filing on October 28, 2009, which reasonably is viewed as a second or successive motion, making the first one surplusage. The court declines to adopt this suggestion. Within the purview of the rules, and considering the record as developed, the court views this, instead, as a supplement to conform the original motion in light of negotiations among certain parties between August 6, 2009 and October 28, 2009.

3

entered into also by her husband (DE# 83).

Defendant Countrywide additionally relies in support of its motion on the affidavit of Ronald H. Garber, its attorney, who testifies as to uncontested issues of or relating to settlement entered into with plaintiff and defendant Hess, by his client, which he handled, entering into evidence a copy a check in the amount of $132,000.00 paid by defendant Countrywide to plaintiff, and an escrow agreement entered into by his law firm with Rosa Burwell of or relating to payment in the amount of $45,000.00.

The attorney for some reason uses his affidavit as a conduit also to offer into evidence the affidavit of Rosa Burwell, wherein she testifies as to that escrow agreement, and the successful efforts of defendant Burwell to return a portion of the funds received upon closing through the offices of third-party defendant Hess. Also, the attorney attaches to his affidavit a certified copy of deposition testimony taken from Rosa Burwell and her husband on April 30, 2009, together with various exhibits introduced at deposition, including a HUD settlement statement.

On February 17, 2010, the magistrate judge held hearing on pending motions, which defendants Rosa Burwell, Clint F. Burwell, and Countrywide attended, together with plaintiff. Defendant Burwell proceeded and continues to proceed *pro se*. As was reiterated at hearing, while Countrywide's cross-claims against defendant Burwell also include a claim for fraud, this defendant proceeds on summary judgment only on the unjust enrichment claim against defendant Burwell.

### STATEMENT OF THE UNDISPUTED FACTS

On February 5, 2005, Rosa Burwell purchased the subject real property at 2632 Loring Lake Drive, Wake Forest, North Carolina. (Johnson Aff. ¶ 4.) Rosa Burwell executed a promissory note secured by the deed of trust, entered into also by her husband Clint F. Burwell. (Id.) The promissory note

4

later was assigned to HSBC Bank USA, N.A. ("HSBC") and plaintiff began servicing the loan for HSBC. (Id. ¶ 5.) On or about December 1, 2005, Rosa Burwell defaulted on payments to plaintiff, and on November 30, 2006, plaintiff initiated foreclosure proceedings in Wake County.[2] (Id. 6–8.) Sometime thereafter, defendant Burwell placed their house for sale. (Rosa Burwell Dep. 77, Dec. 18, 2008.)

On February 9, 2007, a Deed of Full Reconveyance was filed with the Wake County Register of Deeds, which purported to reconvey the property to Rosa Burwell. (Johnson Aff. ¶ 10, Ex. 1B.) On February 20, 2007, a Certificate of Satisfaction was filed with the Register of Deeds. (Id. ¶ 12, Ex. 1C.) Plaintiff asserts both documents were filed without its knowledge (Id. ¶¶ 10, 13). Rosa Burwell likewise denies knowledge of how the documents came to be filed and admits she has not paid off the balance on the note. (Rosa Burwell Dep. 81–83, Dec. 18, 2008; Rosa Burwell Aff.)

Plaintiff eventually discovered the Certificate of Satisfaction and filed a document of rescission. (Johnson Aff. ¶ 14.) However, in the interim, defendant Burwell sold the residence to Shawn Valentine, (Rosa Burwell Dep. 79–80, Dec. 18, 2008), who was loaned $437,500.00 by defendant Countrywide to purchase the property. (Cross-claim ¶¶ 12, 13.) The loan was secured by a lien memorialized in a deed of trust entered into by Shawn Valentine and his wife, Brandie Valentine. (Id. ¶¶ 12, 13.) Defendant Countrywide hired third-party defendant Hess, an attorney, to handle the closing. (Id. ¶¶ 14, 15.) Following the closing, defendant Rosa Burwell received a wire transfer of $387,952.54. (Rosa Burwell Dep. 23–25, Dec. 18, 2008.) This money was not used to pay off the loan to plaintiff; rather, defendant Burwell invested and spent the money. (Id. at 26; Rosa Burwell Aff.)

---

[2] Eventually, the foreclosure proceedings were voluntarily dismissed, and it does not appear from the record that any lien holder has since foreclosed upon the Loring Lake property. (Def. Countrywide's Mot. Summ. J., Ex. 6, Aug. 6, 2009.)

Rosa Burwell admits that if in fact her loan was not paid off to plaintiff then she would remain owing on the note to plaintiff. (Rosa Burwell Dep. 102, Dec. 18, 2008.) Defendant Burwell's expressed desire to recoup the investments and place the funds previously dispersed in "rightful hands," (Burwell Dep. 37, Apr. 30, 2009),[3] also is reiterated in that affidavit made a part of the record, dated September 14, 2009. (Rosa Burwell Aff.) As therein testified to, on August 3, 2009, Rosa Burwell placed $45,000.00 in an escrow account to be dispersed upon resolution of this action. (Rosa Burwell Aff.; Ronald H. Garber Aff., Ex. 4).

At hearing February 17, 2010, the magistrate judge found that Rosa Burwell's promissory note, secured by the Loring Lake property, has since been assigned for value by plaintiff to defendant Countrywide. (M&R 6.) Settlement was referred to in the attorney's affidavit made a part of the record

---

[3] In support of its motion, Countrywide submits a joint deposition undertaken by its attorney of Rosa Burwell and Clint F. Burwell, which shifts back and forth between the witnesses, as it appears both are present and questions asked of each during its course. During examination specifically of Clint F. Burwell, Countrywide's counsel asked him about the closing of the subject real property. Clint F. Burwell testified: "We realize somebody done something wrong here. And I don't know these people. I really don't. We invested the money, and that money is coming back. . . . And when it does, we're going to rectify the problem. . . ." (Burwell Dep. 34, Apr. 30, 2009.) He continued to discuss his plan to recoup the investments, and counsel responded, "Well, if you could get those investment proceeds back, then maybe we can get it squared away." (Id. at 37.) Counsel further suggested that Rosa Burwell and Clint F. Burwell place any recouped funds in the escrow account of Michelle Hess. Clint F. Burwell responded "But was she the one that started this stuff? . . . I'm not sure - - I'm scared to trust her." (Id. 38.) Counsel's dialogue continued in deposition with suggestion that Clint F. Burwell place the funds in counsel for Countrywide's escrow account. (Id.) Clint F. Burwell then sought counsel's assurances: "Okay. So, now, when this happens, are you looking me in the face and telling me I can trust you?" Counsel for Countrywide responded, "Yeah. Because all I want is for this money to go back to where it should, which I guess is the loan company that loaned you all the money. . . . Because, actually, it will help your credit rating if it gets back there." (Id. at 39.) In this exchange at deposition, counsel raises ethical considerations in dealing with an unrepresented person. See N.C. R. Prof'l Conduct 4.3. Because it is plain though, at that point in time, that the interests of plaintiff were adverse to defendants Burwell and Countrywide, and it was around six months later, after this deposition, that Countrywide stepped into the shoes of "the loan company that loaned [Rosa Burwell] all the money," where there is no evidence that such settlement was contemplated on April 30, 2009, the court dispenses with scrutiny of this part of the exchange between counsel and defendant Burwell. However, counsel's representation at deposition to Clint F. Burwell that the escrow money would, if returned to the lender, be used to repay the promissory note entered into by Rosa Burwell is taken into consideration in evaluating Countrywide's position. In the instant motion, as supplemented, with $45,000.00 paid into the escrow account, defendant Countrywide urges that this court should not apply that amount as against any indebtedness due and owing on Rosa Burwell's note, assigned now to it.

6

to which reference has been made, including his testimony as to payment by his client to plaintiff in settlement of its claims against defendant Countrywide in the amount of $132,000.00. The magistrate judge found more particularly that Countrywide paid plaintiff that sum of $132,000.00 to preserve its lien priority, resulting in an assignment for value of defendant Rosa Burwell's note and the deed of trust entered into by defendant Burwell to secure her indebtedness to defendant Countrywide. (Id. at 6, 8, n.1.)[4] Foreclosure proceedings instituted by plaintiff were dismissed on January 15, 2008, in advance of the filing of the instant lawsuit. (Notice of Dismissal, DE # 91-7.) An additional component of this settlement agreement reached among plaintiff and defendants Countrywide and Hess, was that the $45,000.00 placed in escrow by defendant Rosa Burwell now should belong to Countrywide. (Garber Aff. 2.)

On August 6, 2009, Countrywide sought $387,952.54 in damages from defendant Burwell on its unjust enrichment claim. (Def. Countrywide's Mot. Summ. J., Aug. 6, 2009.) It is uncontested that defendant Rosa Burwell received funds at closing in the amount of $387,952.54, shared with her husband. (Rosa Burwell Aff.) On October 28, 2009, Countrywide, without explanation, adjusted its damage request on its unjust enrichment claim downward, to $177,000.00. (Def. Countrywide's Mot. Summ. J., Oct. 28, 2009.) At hearing before the magistrate judge, on February 17, 2010, Countrywide again reduced its claim, this time to $132,000.00, which is the amount Countrywide paid plaintiff to settle plaintiff's claims and obtain assignment of Rosa Burwell's note and the deed of trust. (M&R 7-8.)

Countrywide also asks that the court award it the $45,000.00 placed in escrow, now to be credited towards the $132,000.00 Countrywide seeks. The court has reviewed tape of hearing before the

---

[4]The parties did not object to this characterization of the settlement at hearing or in response to the M&R. As such, the court accepts the magistrate judge's findings regarding the settlement details between plaintiff and Countrywide as undisputed. See 28 U.S.C. § 636(b)(1).

7

magistrate judge, where defendant Countrywide, through counsel, also sought to reserve his client's rights to proceed against defendant Rosa Burwell on the note entered into by her, assigned to defendant Countrywide as a part of its settlement with plaintiff and defendant Hess. There appears due and owing on that note by defendant Rosa Burwell as of May 14, 2008, the sum of $537,054.74. (Am. Compl. ¶ 32.)

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate, under Federal Rule of Civil Procedure 56(c), "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." In deciding a motion for summary judgment, the court construes evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis original).

To assist the court in making such a determination, it may "designate a magistrate judge to submit . . . proposed findings of fact and recommendations for the disposition" of a variety of motions. 28 U.S.C. § 636(b)(1)(B). The court shall make a *de novo* determination of those portions of the M&R to which a

party has filed objections. 28 U.S.C. § 636(b)(1)(C). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; see Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

B.  Analysis

The magistrate judge recommends the court grant summary judgment for defendant Countrywide on its claim of unjust enrichment against defendant Burwell.[5] While there are no objections to the current recommendation, the court still has the obligation to review the record. The court awards relief herein to this defendant but not on any unjust enrichment claim. While advancement of the litigation has been materially aided by the magistrate judge's thoughtful review and presentation upon hearing in development of the facts and in consideration of the issues raised, the court declines to adopt this recommendation.

"Equity will not lend its aid in any case where the party seeking it has a full and complete remedy at law." Jefferson Standard Life Ins. Co. v. Guilford County, 225 N.C. 293, 300, 34 S.E.2d 430, 434 (1945). "[I]n the absence of a special contract controlling the matter . . . [an action for unjust enrichment] will usually lie wherever one man has been enriched or his estate enhanced at another's expense under circumstances that, in equity and good conscience, call for an accounting by the wrongdoer." Thormer v. Lexington Mail Order Co., 241 N.C. 249, 252, 85 S.E.2d 140, 143 (N.C. 1954). Where an express contract governs the subject matter of the dispute, however, a party cannot bring an action for unjust enrichment. Vetco Concrete Co. v. Troy Lumber Co., 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962).

---

[5]Countrywide pleads its cross-claims as causes of actions which exist should plaintiff prevail on its declaratory claim. (Cross-claim ¶ 1.) Plaintiff's declaratory claim is now moot as it has reached a settlement with Countrywide and third-party defendant Hess. Nonetheless, it is proper to reform Countrywide's cross-claims as pleading claims for fraud and unjust enrichment in general.

9

Likewise, "[t]he same rule has been applied to benefits conferred under a special contract with a third person. When there is a contract between two persons for the furnishing of services or goods to a third, the latter is not liable on an implied contract simply because he has received such services or goods." Id.

Notwithstanding any limitation on the availability of a claim for unjust enrichment, equity will impose a constructive trust when necessary to remedy unfair dealings. "[E]quity will establish a trust . . . so as to prevent what otherwise would amount to fraud. . . . It is not necessary that actual fraud be shown, but the establishment of such conduct and bad faith on the party of the defendants as would shock the conscience . . . will suffice to invoke the aid of a court of equity." McNinch, et al. v. American Trust Co., et al., 183 N.C. 33, 110 S.E.2d 663, 665–66 (1922). This remedy, a constructive trust, is proper "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest [and] equity converts him into a trustee." Sara Lee Corp. v. Carter, 251 N.C. 27, 34–35, 519 S.E.2d 308, 313 (1999) (internal quotations omitted). It is appropriate to create a constructive trust when the property was obtained "through a breach of duty, fraud, or other circumstances which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." Id. at 35, 519 S.E.2d at 313 (internal quotations omitted).

Here, Countrywide claims Rosa Burwell and Clint F. Burwell were unjustly enriched because they "received funds from Countrywide which they should not have received and Countrywide did not receive the first priority lien position . . . for which Countrywide had bargained." (Cross-claim ¶ 19.) As Countrywide's own pleadings reflect, its contract with third-party defendant Hess expressly governs the obligation of securing a lien of first priority and that contract provides for a remedy should Hess fail to fulfill

this obligation. Seemingly, Countrywide has an adequate remedy at law for failure to receive first priority lien status, and this remedy lies against third-party defendant Hess.

While Countrywide labels its cross-claim one for unjust enrichment, which the court has rejected as a matter of law, the allegations and prayer therein for equitable relief and pleadings generally promote a claim for a constructive trust, given the unique facts of the case. Defendant Rosa Burwell admits she did not satisfy her loan. Moreover, defendant Burwell did nothing to cure the confusion caused by the Certificate of Satisfaction before closing on the property. As a result of this transaction, defendant Rosa Burwell admitted she and her husband received $387,952.54 in proceeds. Defendant Clint F. Burwell also admits that the money should return to "rightful hands." Defendant Rosa Burwell avers that payment of $45,000.00 placed into escrow should be considered in return of a portion of the funds received in the wire transfer from defendant Hess at closing.

Neither Rosa Burwell nor Clint F. Burwell owe a fiduciary duty to Countrywide, nor have the instant facts been developed at this juncture to show fraud. Nonetheless, the circumstances are such that it makes it inequitable for defendant Burwell to retain the closing proceeds which they have recouped and paid over. The proper beneficiary of these is Countrywide. It now holds the note secured by the deed of trust entered into by the couple which obligates Rosa Burwell to make payments, which note is in default. It disbursed loan proceeds paid to defendant Burwell in consideration of the representation that the loan had been paid and the prior deed of trust satisfied. All things considered, where Rosa Burwell and her husband admit under the unique facts and circumstances presented that payment of $45,000.00 rightfully should be received by the creditor, and where plaintiff expressly disavows entitlement to same upon its settlement including assignment of that note entered into by Rosa Burwell, the court imposes a constructive

11

trust upon the $45,000.00 in escrow. The court now orders that these funds be transferred to defendant Countrywide.

There is no claim made a part of this action by defendant Countrywide to collect on the note now assigned to it. The court, however, has cause to return to statements of counsel Ronald F. Garber and to the principle that one who seeks equity for benefit is likewise subject to equity when the remedy is unfavorable. See Jefferson Standard Life Ins. Co. v. Guilford County, 226 N.C. 441, 448, 38 S.E.2d 519, 524 (1946). At deposition, counsel stated any amount recouped by defendant Burwell should be credited to indebtedness due and owing on the note entered into by Rosa Burwell, as parsed more particularly in footnote three *supra*. This representation conflicts with counsel's statement made at hearing before the magistrate judge, where the court was noticed of Countrywide's reservation of its right in subsequent proceeding to collect on that note without regard to crediting any amount paid by defendant Burwell in this action. As the instant obligation of defendant Burwell to pay results from their failure to return the closing funds to the promisee of the note, the promisee, now Countrywide, may not seek to doubly recover any amount herein awarded in a subsequent action that relates to essentially the same underlying obligation. Instead, the amount held by the law firm of Boxley, Bolton, Garber & Haywood, L.L.P., pursuant to escrow agreement dated August 3, 2009, entered into by defendant Rosa Burwell herein ordered to be paid to defendant Countrywide, shall be credited also to amounts owing on that obligation, secured by deed of trust entered into by defendant Burwell.

## CONCLUSION

For the foregoing reasons, Countrywide's motion for summary judgment (DE # 91, 113) is GRANTED in part on a constructive trust theory and Countrywide is entitled to recover the sum of

12

$45,000.00 held in escrow, which sum shall be transferred to the creditor. In any subsequent action by Countrywide on the note at issue, said amount shall be credited toward any amount owing by Rosa Burwell. The remainder of the motion is DENIED as Countrywide's claim for unjust enrichment is dismissed as a matter of law.

Countrywide's fraud claim remains pending against defendants Rosa Burwell and Clint F. Burwell. The court sets the case at the United States Courthouse, New Bern, North Carolina, for final pre-trial conference **June 14, 2010** at 10 a.m. and for jury trial beginning **June 28, 2010** at 9 a.m. Reference is made to the case management order, entered September 4, 2008, at docket entry 38, for directives governing the parties' final pretrial preparations. As defendant Burwell proceeds *pro se*, they are relieved of the obligation to electronically file and may instead continue to file any documents in paper with the clerk.

If Countrywide declines now for any reason to proceed on the remaining fraud claim, of course it may tender to the court a notice of dismissal. In furtherance of the continued efficient administration of the civil docket, the court sets a deadline for any dismissal submission of **April 13, 2010.** If no notice appears then on the docket, the clerk of court shall publish its notice of the special setting herein ordered for the final pre-trial conference and trial of this matter and, in aid to the court, review the deadlines for pre-trial activities. The clerk shall bring to the attention of the undersigned when filed or otherwise due, the parties' pre-trial submissions ordered to be made in adherence to the Federal Civil Rules of Procedure, the court's local rules, and the undersigned's preferences, all as memorialized in the case management order.

SO ORDERED, this the 29th day of March, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge

13
Case 5:08-cv-00220-FL   Document 125   Filed 03/29/10   Page 13 of 13